UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| YILBER ANTONIO HERNANDEZ-AZUAJE, | * * * * | |
| Petitioner, | * * | Civil Action No. 25-CV-13224-ADB |
| v. | * * | |
| PATRICIA HYDE, TODD LYONS, | * * | |
| Respondents. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

On November 10, 2025, this Court granted Petitioner Yilber Antonio Hernandez-Azuaje's petition for a writ of habeas corpus, ordering the federal government to provide him with a bond hearing under 8 U.S.C. § 1226(a). [ECF No. 8]. At the bond hearing, which took place on November 20, 2025, an immigration judge denied Petitioner's request for release on bond, finding that he was "a danger to the community by clear and convincing evidence." [ECF No. 11-1]. Petitioner now asks this Court to overturn the immigration judge's decision and order his release or, alternatively, a new bond hearing. [ECF No. 13]. For the reasons below, the Court denies Petitioner's request and **DISMISSES** the petition.

1

By statute, "the Attorney General's discretionary judgment regarding the application of [8 U.S.C. § 1226] shall not be subject to review" and "[n]o court may set aside any action or decision by the Attorney General under this section regarding the . . . denial of bond or parole" of any noncitizen.  8 U.S.C. § 1226(e).  This provision strips federal courts of jurisdiction to hear challenges to an "immigration judge's weighing of the evidence and exercise of discretion with respect to dangerousness."  Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 144 (D. Mass. 2019); see also Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations.").  It does not, however, deprive courts of jurisdiction to hear constitutional challenges to "the extent of the Government's detention authority under the 'statutory framework' as a whole."  Hernandez-Lara v. Lyons, 10 F.4th 19, 33–34 (1st Cir. 2021) (quoting Jennings v. Rodriguez, 583 U.S. 281, 295–96 (2018)).  Exercising that jurisdiction, the First Circuit has held that placing on noncitizens the burden of proving, at a bond hearing, that they do not pose a danger to the community or a flight risk violates the Fifth Amendment's Due Process Clause.  Id. at 23–24, 39, 41.  Instead, as relevant here, due process requires that the government bear the burden of proving dangerousness "by clear and convincing evidence."  Id. at 41.

District courts in the First Circuit have reviewed immigration judges' bond determinations for compliance with this constitutionally mandated burden of proof.  See, e.g., Garcia v. Hyde, No. 25-cv-00585, 2025 WL 3466312, at *5, *12 (D.R.I. Dec. 3, 2025) (granting habeas relief); Mayancela Mayancela v. FCI Berlin, No. 25-cv-00348, 2025 WL 3215638, at *6–7 (D.N.H. Nov. 18, 2025) (denying habeas relief); Dos Reis v. Vitello, No. 25-cv-10497, 2025 WL 1043434, at *2–3 (D. Mass. Apr. 8, 2025) (denying habeas relief).  To show that an immigration judge failed to apply the correct standard, a noncitizen must either "point to the

language of the immigration judge's opinion or demonstrate that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)).  Given the highly circumscribed nature of judicial review in this context, courts cannot override an immigration judge's bond decision simply because they "might have reached a different result if considering the issue de novo or in the context of a bail review in a criminal case." Massingue v. Streeter, No. 19-cv-30159, 2020 WL 1866255, at *5 (D. Mass. Apr. 14, 2020).  Rather, habeas relief is appropriate only if the immigration judge's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz, 384 F. Supp. 3d at 144 (quoting Pratt v. Doll, No. 17-cv-01020, 2019 WL 722578, at *4 (M.D. Pa. Feb. 20, 2019)).

Here, Petitioner argues primarily that the evidence before the immigration judge could not as a matter of law have supported the decision to deny him bond.  [ECF No. 13 at 6–9].  He asserts that the immigration judge based her decision entirely on Petitioner's criminal history, and, specifically, pending criminal charges for possession with intent to distribute cocaine, possession with intent to distribute cocaine in a school zone, conspiracy to violate a drug law, and resisting arrest, all of which arose from a June 18, 2003, arrest in Fall River, Massachusetts. [Id. at 2]; [ECF No. 13-1 ¶ 6 (attorney declaration regarding bond hearing)]; see also [ECF No. 1 ¶ 33 (describing pending charges)]; [ECF No. 13-2 (arrest report)].  According to Petitioner, the immigration judge's decision violated due process because the arrest report contains "no incriminating evidence . . . connecting him with possession of controlled substances."  [ECF No. 13 at 7].  The government counters that the arrest report contains incriminating information

3

implicating Petitioner in the charged crimes and that § 1226(e) prohibits this Court from reweighing the evidence presented to the immigration judge. [ECF No. 17 at 3 & n.2, 9].

On the record before it, the Court agrees with the government.[1]  Petitioner challenges the immigration judge's reliance on the arrest report, but his characterization of that report as containing no incriminating evidence against him is not persuasive.  Specifically, the arrest report states that (1) police found cocaine in the center console of a car that Petitioner was driving; (2) the passenger in the car had cocaine on him; (3) Petitioner and the passenger refused to open the car doors when asked to do so by police and were removed from the car "[a]fter a brief struggle" with police. [ECF No. 13-2 at 4].  Even though the Court might, on direct review (and with the benefit of more information and context), weigh this evidence differently, it cannot say that the immigration judge's conclusion that it amounted to clear and convincing evidence of dangerousness was "so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz, 384 F. Supp. 3d at 144 (quoting Pratt, 2019 WL 722578, at *4).[2]

---

[1] The government states that "[b]ond hearings are recorded" and that, "[a]s a result of Petitioner's appeal to the BIA of the IJ's bond decision, the IJ will be required to issue a written decision explaining the basis of her denial decision." [ECF No. 17 at 2 n.1].  The parties have not submitted a written decision by the immigration judge or a transcript of the bond hearing to this Court, but the government does not specifically dispute Petitioner's characterization, see [ECF No. 13-1], of the hearing.  The Court notes that the parties do not explicitly state, though their arguments presuppose, that the June 18, 2003, arrest report, on which their arguments center, was before the immigration judge. [ECF No. 13 at 2, 7]; [ECF No. 17 at 2, 11].  Petitioner's attorney states that Petitioner appealed the immigration judge's decision on December 4, 2025, but that it "may take several weeks" for the Board of Immigration Appeals "to issue a transcript of bond proceedings." [ECF No. 13-1 ¶ 3]; see also Centro Legal de la Raza v. Exec. Off. for Immigr. Rev., 524 F. Supp. 3d 919, 930–31 (N.D. Cal. 2021) (noting that "[th]ere is no set timetable for the BIA to mail" the transcript of proceedings before the immigration judge to the parties "and parties and their counsel can wait weeks, months, or over a year between the time of the IJ's decision and when they receive these materials from the BIA").

[2] The cases upon which Petitioner relies in urging a contrary result, [ECF No. 13 at 6–7], are distinguishable.  In Garcia, an immigration judge found that a noncitizen posed a flight risk based

Petitioner also argues that the immigration judge did not "sufficiently explain [her] reasoning," frustrating this Court's ability to review whether his continued detention comports with due process. [ECF No. 13 at 8]. The Court declines to order Petitioner's release or a renewed bond hearing on the ground that "the IJ's explanation of her decision [was] insufficiently fulsome in detail to satisfy due process," Dos Reis, 2025 WL 1043434, at *2, because "the logical underpinnings" of the immigration judge's reasoning "are clear" from the limited record before the Court, which is all that is required. Mayancela Mayancela, 2025 WL 3215638, at *6 (quoting López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025)). As discussed supra, that reasoning sufficiently supports the decision to deny bond, at least under the highly circumscribed standard of review that applies to collateral challenges such as Petitioner's.

Accordingly, Petitioner's petition, [ECF No. 1], is **DISMISSED**.

**SO ORDERED.**

January 28, 2026                               */s/ Allison D. Burroughs*
                                               ALLISON D. BURROUGHS
                                               U.S. DISTRICT JUDGE

---

solely on a Guatemalan arrest warrant, but the hearing transcript established that the immigration judge did not know what the alleged charges were and disregarded evidence that the warrant was no longer active. 2025 WL 3466312, at *8–11. And in Ortega-Rangel v. Sessions, an immigration judge based her finding of dangerousness on a prior arrest for drug possession, even though the underlying police report and declaration supporting the noncitizen's arrest showed only that the noncitizen was "aware that her boyfriend at the time sold drugs," not that she herself had sold drugs. 313 F. Supp. 3d 993, 1004 (N.D. Cal. 2018). The evidence of Petitioner's dangerousness in the arrest report is considerably more probative and specific than that in Garcia or Ortega-Rangel.